UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

In re:                                            Chapter 7

GUILLERMO D. FERNANDEZ TINEO,                     Case No. 18-14005 (SMB)

                        Debtor.
------------------------------------------------X
PENTAGON FEDERAL CREDIT
UNION,

                        Plaintiff,               Adv. Pro. No. 19-01086 (SMB)

            - against -

GUILLERMO D. FERNANDEZ TINEO,

                        Defendant.
------------------------------------------------X


### POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A P P E A R A N C E S:**

JASPAN SCHLESINGER LLP
*Attorneys for Plaintiff*
300 Garden City Plaza
Garden City, New York 11530

        Frank C. Dell'Amore, Esq.
                Of Counsel.

Guillermo D. Fernandez Tineo
*Defendant Pro Se*
1 Adrian Avenue #3D
Bronx, NY 10463

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

        Pentagon Federal Credit Union ("Plaintiff") filed this adversary proceeding for a

determination that a debt in the sum of $31,341.00 ("Debt") owed by the defendant and

debtor Guillermo D. Fernandez Tineo ("Debtor") is not dischargeable under 11 U.S.C. §

523(a)(2)(A) and (B).  The Court conducted a trial on September 18, 2019, heard the

testimony of two witnesses and received several exhibits.  The Court concludes, for the

reasons that follow, that the Debt is excepted from discharge under 11 U.S.C. §

523(a)(2)(A).

### FINDINGS OF FACT[1]

This case involves a loan made by the Plaintiff to the Debtor for the ostensible

purpose of buying a car.  The Plaintiff is a credit union that extends loans to its

members.  The Plaintiff's trial witness, John Dorn, a vice president of the Plaintiff,

explained that members may apply for and obtain a unique identification and password

which, among other things, allows them to apply for a loan online.  In the case of a car

loan, the borrower must supply the details of the purchase including the make, model

and VIN, the mileage and whether the collateral is new or used.  (Tr. 7:16-10:4.)

The Debtor needed a loan to buy a bodega rather than a car.  (Tr. 43:23-24.)  In

June or July 2017, (Tr. 29:20-21), "Jose" introduced the Debtor to "Rich" who was going

to help him get a loan.  (Tr. 27:11-21.)  The Debtor and Rich met at a house located in

Yonkers, New York, (Tr. 29:11-18), but the Debtor did not know Rich's last name, (Tr.

24:15), his employer, (Tr. 26:21-23, 27:22-25, 30:4-6), the address where they met or

Rich's telephone number.  (Tr. 31:20-25.)  At the meeting, the Debtor provided Rich

with his social security number and a copy of his driver's license and authorized Rich to

apply for a loan on his behalf.  (Tr. 25:9-26:7, 31:5-19.)

---

[1]      In this decision, "PX" refers to the Plaintiff's exhibits and "Tr." refers to the trial transcript.  (ECF
Doc. # 15.)  Debtor appeared *pro se* and did not offer any exhibits.

After the meeting, Rich submitted an online loan application to the Plaintiff ("Application") (PX 1 (computer printout)) in the name of the Debtor requesting a loan in the amount of $31,341.00 (the "Loan").  (Tr. 9:6-7, 24:10-11, 25:1-2.)  The Debtor testified that he never heard of the Plaintiff and did not supply Rich with a password, (Tr. 25:5-7), but this testimony was not credible.  Based on the testimony of Mr. Dorn, which I credit, Rich could not have applied on-line for a loan from the Plaintiff in the Debtor's name unless the Debtor was a member and had supplied Rich with his unique password.  (Tr. 9:9-10:4.)

The Application indicated that the purpose of the Loan was to finance the Debtor's purchase of a 2017 Nissan Rogue VIN JN8AT2MV7HW274080 ("Vehicle") which was to serve as collateral for the Loan.  (Tr. 13:5-19; PX 1.)  The Application also stated that the Debtor was employed at Las Matas Grocery Corp. earning a monthly salary of $8,853.70.  (Tr. 15:13-16:7; PX 1.)  These statements were false.  First, the Debtor did not work at Las Matas Grocery Corp. when the Application was submitted and he never earned a salary of $8,853.70 per month from Las Matas Grocery Corp. ("Income Representation").  (Tr. 33:19-34:18, 35:4-7.)  He earned only $3,600.00 per month when he did work there.  (Tr. 34:14-18, 35:10-25.)  Second Debtor did not intend to use the Loan to buy a car, (Tr. 37:8-39:6), and hence, pledge it as collateral for the Loan ("Use Representation").  Instead, the Debtor intended to use the Loan to purchase a bodega.  (Tr. 43:23-24.)

Mr. Dorn testified that the Plaintiff would not have made the Loan if the Vehicle had not been offered as collateral.  (Tr. 15:7-12.)  He did not testify that the Plaintiff relied on the Income Representation in its decision to make the Loan.

3

Debtor received a check from the Plaintiff in the amount of $31,341.00 in the mail ("Check") (PX 2).[2]  (Tr. 23:12-19, 41:14-16.)  The Check was made payable jointly to the Debtor and "Teddy Nissan."  It also included an endorsement preprinted by the Plaintiff.  (Tr. 16:23-17:2.)  The endorsement specified the make, model and VIN of the Vehicle and appointed the Plaintiff as attorney-in-fact to perfect its lien in the Vehicle.

The Debtor never inquired why "Teddy Nissan" was one of the payees, (Tr. 45:7-12), or why he had received a check that obviously pertained to purchase of a motor vehicle.  Nor did he endorse the Check.  Instead, he gave the Check to Jose, (Tr. 42:3-8), and Jose or someone else endorsed it in the names of the two payees.[3]  The Check was then deposited into a bank account and honored by the Plaintiff.  (Tr. 18:8-10.)  Jose gave the Debtor a check in the approximate amount of $25,000 (the "Second Check"), (Tr. 42:16-43:2), and although the Debtor had his own bank account, he caused the Second Check to be deposited in a bank account belonging to a person named "Ricky." (Tr. 43:3-16, 44:7-11.)  The Debtor could not explain why he did this.  (Tr. 43:17-24.) Ricky deposited the Second Check in his bank account and gave approximately $25,000 in cash to the Debtor, and the Debtor gave the cash to a person he could not identify to buy the bodega.  (Tr. 44:17-24.)  The Debtor understood that he would have to repay the Loan.  (Tr. 44:3-6.)

---

[2]      Along with the Check, the Debtor also received a Promissory Note (PX 3) in the principal amount of $31,341.00 but did not sign or return to the Plaintiff.  (Tr. 14:17-20, 18:25-19:1, 19:22-20:13, 23:12-22, 41:17-21.)

[3]      I compared the Debtor's supposed signature on the back of the Check with his signature on an affidavit he submitted during the case, (ECF Doc. # 8), and they do not match.

Debtor never made any Loan payments to the Plaintiff, (Tr. 21:16-18, 46:2-4),

and owes the Plaintiff $31,341.00 plus interest and fees.  (*See* PX 4.)

## CONCLUSIONS OF LAW[4]

### A.   11 U.S.C. § 523(a)(2)(A)

The Plaintiff's first claim for relief seeks a declaration of non-dischargeability

under 11 U.S.C. § 523(a)(2)(A).  This section excepts from discharge any debt obtained

by "false pretenses, a false representation, or actual fraud, other than a statement

respecting the debtor's or an insider's financial condition."  To establish non-

dischargeability pursuant to this section, a creditor must prove by a preponderance of

the evidence, that: "(1) the debtor made a misrepresentation; (2) the debtor knew the

representation was false at the time it was made; (3) the representation was made with

the intent to deceive the creditor; (4) the creditor relied on the representation; and

(5) the creditor was injured by the representation and suffered damages as a result."

*Kuper v. Spar (In re Spar)*, 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994).

Importantly, for purposes of Section 523(a)(2)(A), "the acts of an agent will be

imputed to the debtor principal . . . if the debtor knew *or should have known* of the

agent's fraudulent conduct or was recklessly indifferent to it."  *Borges v. Placeres* (*In re*

*Placeres*), 578 B.R. 505, 517 (Bankr. S.D.N.Y. 2017) (emphasis in original); *see also*

*Warthog, Inc. v. Zaffron (In re Zaffron)*, 303 B.R. 563, 572 (Bankr. E.D.N.Y. 2004).

When the agent makes a false statement, additional facts suggesting that the principal-

debtor knew, yielded to, or failed to investigate the agent's statement may be sufficient

---

[4]      The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference*, No. M 10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

to impute liability to the principal. *In re Lovich*, 117 F.2d 612, 615 (2d Cir. 1941); *see also In re Forman*, 40 F. Supp. 889, 890 (E.D.N.Y. 1941) (finding that the debtor's failure to find out the answers his agent wrote on the statement before it was submitted to the bank amounted to permitting a fraud to be perpetrated on the bank). A principal's reckless disregard of the facts is also sufficient on the basis that the principal would have discovered the fraud had he paid minimal attention to the acts of his agent. *Chrysler Capital Corp. v. Salzman (In re Salzman)*, 61 B.R. 878, 890 (Bankr. S.D.N.Y. 1986) ("When a principal of a corporation signs false documents without examining them and either knows or should have known of the fraud, the requisite intent to defraud may be inferred from such reckless disregard of the accuracy of the facts, because had the principal paid minimal attention, he would have been alerted to the fraud.").

Here, the Debtor authorized Rich to apply for the Loan on his behalf, making Rich his agent for that purpose. The Application included, among other things, the false Use Representation which was intended to induce the Plaintiff to make the Loan and the Plaintiff justifiably and reasonably relied on the Use Representation in disbursing the Loan. The Debtor was recklessly indifferent to what Rich stated in the Application and paid no attention. Furthermore, when he received the Check, the Debtor knew or should have known from the preprinted endorsement that it was for the purchase of the Vehicle that would serve as collateral for the Loan. He did not return the Check to the Plaintiff. Instead, he delivered the Check to Jose, the person that introduced the Debtor to Rich, and ultimately received $25,000.00 which he used to buy a bodega. He thereby

6

profited from the fraud perpetrated by his agent.  Accordingly, the Debt is not

dischargeable under Bankruptcy Code § 523(a)(2)(A).

**B.      11 U.S.C. § 523(a)(2)(B)**

The Plaintiff's second claim for relief seeks a declaration that the Debt is not

dischargeable under Bankruptcy Code § 523(a)(2)(B).  The latter excepts from discharge

any debt:

> (2)      for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
>
> (B)      use of a statement in writing—
>
> (i)      that is materially false;
>
> (ii)      respecting the debtor's or an insider's financial condition;
>
> (iii)      on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv)      that the debtor caused to be made or published with the intent to deceive.

11 U.S.C. § 523(a)(2)(B).  A statement about a single asset may constitute a statement

relating to a debtor's financial condition within the meaning of 11 U.S.C. § 523(a)(2)(B).

*Lamar, Archer & Coffrin, LLP v. Appling*, 138 S. Ct. 1752, 1764 (2018).

The Income Representation is arguably a written statement "respecting the

debtor's . . . financial condition," and excepted from discharge, if at all, only under 11

U.S.C. § 523(a)(2)(B).  Regardless of whether it is, it is insufficient to support a non-

dischargeability claim under either subparagraph (A) or (B).  Mr. Dorn testified that the

Plaintiff relied on the false Use Representation in extending the Loan but did not testify

that the Plaintiff relied on the Income Representation in making the Loan.  Accordingly,

the second claim for relief is dismissed.

7

The Plaintiff is directed to submit a proposed judgment excepting the Debt from discharge and awarding a money judgment in the amount of the Debt, accompanied by a statement of judgment showing the computation of the amount of the judgment inclusive of interest and costs.

Dated:  New York, New York
        November 26, 2019

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge